IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BRENDA C. CUTLER,

    Plaintiff,

v.                                                     No. 09-1238

JASON SCOTT, et al.,

    Defendants.

---

ORDER GRANTING MOTIONS FOR PARTIAL DISMISSAL AND TO STRIKE

---

*INTRODUCTION*

On March 3, 2009, the Plaintiff, Brenda C. Cutler, brought an action in this Court under 42 U.S.C. § 1983 against Daryl G. Allen, Ilian DeJesus, Roy Wyatt, and Decatur County, Tennessee (the "County"), Case No. 09-1046. The case was dismissed without prejudice on September 30, 2009.[1] On October 29, 2009, Cutler initiated this nearly identical action against Jason Scott,[2] Allen, DeJesus, Wyatt, and the County, alleging violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988,[3] as well as claims for negligence, intentional and/or negligent infliction of emotional distress, conspiracy,

---

[1] For purposes of this order, the Court will assume the Tennessee savings statute applies to Cutler's claims. *See* Tenn. Code Ann. § 28-1-105(a).

[2] Scott was not a named defendant in Case No. 09-1046.

[3] Section 1988 permits an award of attorney's fees to a prevailing party in a civil rights action. *See* Gregory v. Shelby County, Tenn., 220 F.3d 433, 446-47 (6th Cir. 2000). Although the Plaintiff has not elaborated on her § 1988 claim, the Court assumes that she, in making allegations under the statute, merely intended to reserve her right to seek attorney's fees should she succeed on the merits of her § 1983 claim. *See* Board of Trs. Sabis Int'l Sch. v. Montgomery, 205 F. Supp. 2d 835, 853 n.12 (S.D. Ohio 2002).

assault, false imprisonment and failure to train under Tennessee law. According to the complaint, Scott and Wyatt are the County's mayor and sheriff, respectively. (Compl. at 1-2.) Allen is a County sheriff's department investigator. (Compl. at 1.) DeJesus is a private citizen residing in Decatur County, Tennessee. (Compl. at 1-2.) Before the Court are the separate motions of Defendants Scott, Wyatt and the County (collectively, the "Movants") (D.E. 10) and Defendant DeJesus (D.E. 17) to dismiss certain claims and to strike section II, paragraph 11 of the Plaintiff's complaint, pursuant to Rule 12 of the Federal Rules of Civil Procedure.

*MOTIONS TO DISMISS*

I.      Standard of Review.

Rule 12(b)(6) permits the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, the plaintiff "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). "And although [the Court] must accept all well-pleaded factual allegations in the complaint as true, [it] need not 'accept as true a legal conclusion couched as a factual allegation.'" Hensley Mfg., 579 F.3d at 609 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955)).

II.     Arguments of the Parties and Analysis.

A.      <u>Federal Claims.</u>

1.      <u>Statute of Limitations.</u>

The instant motions first seek dismissal of the allegations contained in section II, paragraphs 1 through 6 of Plaintiff's complaint, to-wit:

> 1.      Plaintiff Cutler alleges that beginning on March 23, 2007, she has been subjected to an ongoing barrage of misconduct in which a private individual, Defendant DeJesus, has utilized the capacity of law enforcement along with the mechanisms of the criminal justice system to pursue a private agenda.
>
> 2.      Plaintiff Cutler was initially arrested on the afternoon of Friday, March 23, 2007, for alleged criminal trespass on Defendant DeJesus' property. The date of this act was alleged to be March 11, 2007, and consisted of the Defendant DeJesus awakening to noises, and then finding Plaintiff Brenda Cutler trespassing on her property. The allegations in the Affidavit of Complaint, prepared by Defendant Allen, further stated that Defendant Cutler "has continued to create a nuisance to Ms. DeJesus by continuing to harass her, trespass on the property without consent, and to harass others as they are working at the DeJesus' residence. Ms. DeJesus had asked Ms. Cutler to please stay off her property, but has met with little or no success."
>
> 3.      Throughout the pendency of this action, Plaintiff Cutler has maintained her innocence and demanded the State of Tennessee proceed with the prosecution of this matter. Although the Affidavit of Complaint by implication states there are witnesses to this alleged trespass, no witnesses have been produced by Defendant DeJesus in the numerous court appearances stemming from this event.
>
> 4.      Plaintiff Cutler was arrested for the second time on April 24, 2007, allegedly for violating a No Contact Order. The Affidavit of Complaint that initiated these proceedings was also prepared by Defendant Allen.
>
> 5.      The warrant prepared by Defendant Allen alleged that Plaintiff Cutler harassed Defendant DeJesus between March 26, 2007 and April 19, 2007. Although Defendant Allen stated under oath that videotaped evidence of the harassment existed, Defendants DeJesus and Allen have never produced a videotape in Court.
>
> 6.      At a hearing of this matter, Defendant DeJesus testified in open court that Plaintiff Cutler engaged in throwing rocks, shooting laser beams from a tree, and "mooning" Defendant DeJesus.

(Compl. at 3-4.)

The complaint also contains the following allegations.[4] Cutler was again arrested on April 25, 2008 for stalking DeJesus and violating an order of protection and no contact order. (Compl. ¶ 7.) According to Allen, the facts supporting the stalking allegation consisted of "parking on public roadways of the property of the respective parties." (Compl. ¶ 9.) This arrest occurred at Plaintiff's residence in the presence of numerous friends who had gathered for a birthday party. (Compl. ¶ 10.) Wes Woodard, the arresting officer, contacted Wyatt to inquire whether Cutler could present herself at the County jail the following morning. (Compl. ¶ 10.) Wyatt refused, stating that he was getting "a lot of heat from upstairs," and insisted the Plaintiff be arrested immediately. (Compl. ¶ 10.) Based on the actions of the Defendants, Cutler claims, she was subjected to humiliation among her friends, intimidation and false imprisonment.

The Movants and DeJesus[5] contend that the acts alleged in paragraphs one through six fall outside the applicable statutes of limitations for violations of § 1983 and for her state law claims. "In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied. Tennessee's limitations period for actions brought under federal civil rights statutes or for personal injuries is one year." Arauz v. Bell, 307 F. App'x 923, 927 (6th Cir. 2009) (quoting Berndt v. Tenn., 796 F.2d 879, 883 (6th Cir. 1986)); *see also* Tenn. Code Ann. § 28-3-104(a). "Federal law determines when the statute

---

[4]Allegations relative to the Plaintiff's arrest in 2008 are included herein for purposes of completeness only. The Movants and DeJesus have not requested dismissal of Cutler's federal claims arising from the 2008 arrest.

[5]While "[a] plaintiff may not proceed under § 1983 against a private party [such as DeJesus] no matter how discriminatory or wrongful the party's conduct," unless certain circumstances are present, *see* Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003), DeJesus has not sought dismissal on those grounds. Therefore, the Court will not consider herein whether she is a proper defendant under § 1983.

of limitations begins to run, and under federal law, 'the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.'" Arauz, 307 F. App'x at 927-28 (quoting McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988)).

The actions alleged in paragraphs one through six occurred in 2007, more than one year before the filing of her initial lawsuit in March 2009. As Cutler clearly knew of the injury or injuries which formed the basis of her complaint, her federal claims involving those actions were filed outside the statute of limitations period..

In response, however, Cutler submits that "the charges brought against the Plaintiff were of a continuous pattern or chain of events linked to the original incident that initially began in [sic] March 26, 2007, which was dismissed by the Honorable Judge Ricky Wood, Decatur County General Sessions Court." (Pl.'s Resp. to Deny Defs. Jason Scott, Roy Wyatt, & Decatur County's Mot. for Partial Dismissal & Mot. to Strike at 1.)[6] The Sixth Circuit has articulated that the "continuing violations" doctrine

> applies only to violations that are part of a longstanding and demonstrable policy of illegality. The policy must extend beyond the plaintiff who asserts the doctrine; to establish a continuing violation, the plaintiff must demonstrate something more than the existence of discriminatory treatment in [her] case. Rather, the preponderance of the evidence must establish that some form of intentional discrimination against a *class* of which plaintiff was a member was the [defendants'] standard operating procedure.

Cherry v. City of Bowling Green, Ky., 347 F. App'x 214, 216 (6th Cir. 2009) (internal citations and quotation marks omitted) (emphasis in original).

Under a three-part test adopted by this Circuit, a continuous violation exists if "(1) the

---

[6]The Court notes that the response filed by the Plaintiff to the Movants' filing is one-and-one-half pages long and contains no case citations whatever. Plaintiff filed no response to DeJesus' motion.

5

defendants engage in continuing wrongful conduct; (2) injury to the plaintiff[] accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." Hensley v. City of Columbus, 557 F.3d 693, 697 (6th Cir. 2009). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation. Passive inaction does not support a continuing violation theory." Eidson v. State of Tenn. Dep't of Children's Servs., 510 F.3d 631, 635 (6th Cir. 2007) (internal citations and quotation marks omitted), *see also* Kovacic v. Cuyahoga County Dep't of Children & Family Servs., 606 F.3d 301, at *5 (6th Cir., 2010) (same).

"This Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to Section 1983 actions." Henley v. Tullahoma City Sch. Sys., 84 F. App'x 534, 539 (6th Cir. 2003) (quoting Sharpe v. Cureton, 319 F.2d 259, 267 (6th Cir. 2003)); *see also* Ohio Midland, Inc. v. Ohio Dep't of Transp., 286 F. App'x 905, 912 (6th Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S. Ct. 1907, 173 L. Ed. 2d 1057 (2009) (noting that "courts have been extremely reluctant to apply the continuing violations doctrine outside the context of Title VII"). In Section 1983 cases, "claimants are precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period." Baar v. Jefferson County Bd. of Educ., 311 F. App'x 817, 824 (6th Cir. 2009) (citations and internal quotation marks omitted).

The Plaintiff's federal civil rights claims as set forth in paragraphs one through six are based solely on arrests occurring in 2007. She "cannot use the fact that some of [her] claims[, i.e., the 2008 arrest,] fall within the statute of limitations to redeem those claims that do not." *See* Aboubeid v. Hargus, No. 2:08-cv-762, 2010 WL 1849281, at *6 (S.D. Ohio May 3, 2010) (plaintiff's claims

against police officer whom he alleged harassed him over a period of time because of his Middle Eastern ethnicity could not use the continuing violation doctrine to salvage time-barred claims by attempting to link actions occurring outside the statutory period with separate incidents taking place within the period.) (citation omitted).  Any alleged continuing ill effects stemming from the arrests are not sufficient grounds for application of the continuing violation theory.  *See* Eidson, 510 F.3d at 635.  Furthermore, the Plaintiff's averment that she has continued to maintain her innocence and demanded the State of Tennessee take action[7] constitutes the type of mere inaction that falls short of satisfying the doctrine.  *See* id. at 635-37 (plaintiff's allegation of continued violation based on contention that defendants continued to fail to conduct the sort of thorough investigation that would have exonerated him failed as mere inaction).  These allegations, as well as Cutler's vague reference to "an ongoing barrage of misconduct," are simply not, viewing them in the light most favorable to the Plaintiff, enough to warrant a reasonable inference that a continuing violation occurred.  *See* Iqbal, 129 S. Ct. at 1949.  Based on the Court's rejection of the continuing violations theory, the Plaintiff's federal civil rights claims as to the 2007 arrests are time-barred.

          2.        Official/Individual Capacity Claims Against Scott.

With respect to the Plaintiff's timely federal claims, the Movants request that the Court grant dismissal as to Defendant Scott.  Regretfully, the Plaintiff has not indicated whether she has sued this Defendant in his individual capacity, his official capacity, or both.  A suit against Scott in his official capacity cannot stand.  It is well-settled that "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  Matthews v. Jones, 35 F.3d

---

[7]It is unclear from the complaint exactly who the Plaintiff wants the State of Tennessee to prosecute.

1046, 1049 (6th Cir. 1994) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 68, 109 S. Ct. 2304, 2310-11, 105 L. Ed. 2d 45 (1989)).  Accordingly, as the Plaintiff's official capacity claims against Scott are in essence claims against the County itself, they are hereby DISMISSED.

Any federal claims against Scott in his individual capacity must fail as well.  As previously noted herein, *see supra note 2*, the Plaintiff did not bring suit against this Defendant until October 29, 2009.  The last event complained of -- Cutler's April 26, 2008 arrest -- occurred more than one year prior to the filing of the complaint.  Thus, the claims against Scott in his individual capacity are likewise time-barred.  *See* Arauz, 307 F. App'x at 927.

      B.      State Law Claims Against Movants.

The Movants also seek dismissal of the Plaintiff's state law claims.  Such claims against governmental entities and their employees are governed by the Tennessee Governmental Tort Liability Act (the "TGTLA").[8]  *See* Tenn. Code Ann. § 29-20-101, *et seq*.  These claims would ordinarily confer supplemental jurisdiction in this Court because they arise out of the same facts and form part of the same case or controversy.  *See* 28 U.S.C. § 1367(a).[9]  However, TGTLA claims must be brought in "strict compliance" with the terms of the state statute.  Tenn. Code Ann. § 29-20-

---

[8]Although the complaint makes no reference to the TGTLA, the statute "is the exclusive state-law remedy against a Tennessee municipality." Uhuru v. City of Memphis, No. 08-2150-V, 2008 WL 4646156, at *9 (W.D. Tenn. Oct. 17, 2008) (citation omitted).  "[N]o Tennessee authority requires the statute to be expressly cited within the body of the complaint." Id. (citation omitted).

[9]The statute provides in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

201©. The TGTLA gives the state circuit courts exclusive original jurisdiction over claims brought pursuant to its provisions. Tenn. Code Ann. § 29-20-307.

A federal district court may, in its discretion, decline supplemental jurisdiction over a state law claim, even if jurisdiction would otherwise be proper under § 1367(a). Section 1367(c)(4) allows a district court to "decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4).

In Gregory, the Sixth Circuit affirmed the district court's dismissal of TGTLA claims, stating, "[i]n this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." Gregory, 220 F.3d at 446; *see also* Maxwell v. Conn, No. 89-5060, 1990 WL 2774, at *4 (6th Cir. Jan. 18, 1990) (stating that the TGTLA's grant of exclusive jurisdiction to the state courts "belie[d]" plaintiff's argument that he could expect to try the TGTLA claims in the same proceeding as his federal § 1983 claim); Spurlock v. Whitley, 971 F. Supp. 1166, 1185 (M.D. Tenn. 1997), *aff'd sub nom.* Spurlock v. Satterfield, 167 F.3d 995 (6th Cir. 1999) (court held "that the exclusivity provision of the TGTLA provides a compelling reason for [declining] supplemental jurisdiction of the TGTLA claim" where diversity was absent).[10] Therefore, federal courts would appear obligated to apply the TGTLA limitations on suability as a matter of state substantive law. *See* Fromuth v. Metro. Gov't of Nashville, 158 F. Supp. 2d 787, 798

---

[10]"[D]istrict courts sitting in Tennessee have declined to apply the strict jurisdictional provision of the TGTLA where federal jurisdiction also existed on the grounds of diversity of citizenship." Huff v. City of Camden, Tenn., No. 07-2644, 2009 WL 276770, at *11 (W.D. Tenn. Jan. 30, 2009) (citation omitted). However, it appears from the complaint that all the parties in this matter are residents of Tennessee and, thus, there is no diversity of citizenship.

(M.D. Tenn. 2001). The Court declines to accept jurisdiction over the Plaintiff's claims brought pursuant to the TGTLA in accordance with 28 U.S.C. § 1367(c)(4). Because the Court declines to accept jurisdiction over these state claims, they are DISMISSED without prejudice.[11]

    C.    <u>State Law Claims Against DeJesus.</u>

DeJesus moves for dismissal of Cutler's state law claims against her relative to the Plaintiff's 2007 arrests. Although it is unclear from the complaint which state law causes of action have been leveled at DeJesus, as previously noted herein, Tennessee Code Annotated § 28-3-104(a) provides for a one-year statute of limitations for "actions for libel, for injuries to the person, false imprisonment, malicious prosecution . . ." Claims for infliction of emotional distress are also subject to a one-year limitations period. <u>Wilhite v. Corrections Corp. of Am.</u>, No. 09-2196 B, 2010 WL 797805, at *2 (W.D. Tenn. Feb. 26, 2010) (citation omitted). In addition, because civil conspiracy is "neither a punishable offense standing alone nor a wrong capable of supporting a cause of action by its own weight," courts have applied the statute of limitations for the underlying substantive alleged tort to such claims. *See* <u>Stratienko v. Chattanooga-Hamilton County Hosp. Auth.</u>, No. 1:07-CV-258, 2009 WL 736007, at *12 (E.D. Tenn. Mar. 17, 2009); *see also* <u>Schmank v. Sonic Auto., Inc.</u>, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *2 n.2 (Tenn. Ct. App. May 16, 2008) (same). Accordingly, the Plaintiff's state law claims against DeJesus involving the 2007 arrests are time-barred.

*MOTIONS TO STRIKE*

---

[11]In light of the Court's decision to decline exercise of jurisdiction over the Plaintiff's state law claims, it need not address the Movants' additional bases for dismissal thereof.

The Movants and DeJesus request that section II, paragraph 11 be stricken from the complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. The Plaintiff asserts therein as follows:

> Plaintiff Cutler alleges that on dozens of occasions when Defendant DeJesus' husband was absent from the residence, Defendant Allen would appear at the DeJesus residence and remain for as long as one to two hours. Furthermore, these visits would occur while Defendant Allen was in the custody of a vehicle owned by the Decatur County Sheriff's Department.

(Compl. at 5.) The Rule permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It is "well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." Woods v. Northport Pub. Sch., No. 1:09-cv-243, 2010 WL 2232263, at *1 (W.D. Mich. June 3, 2010) (quoting Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953)); Williams v. Provident Inv. Counsel, Inc., 279 F. Supp. 2d 894, 906 (N.D. Ohio 2003) (quoting Brown). Moreover, "[s]uch motions are generally regarded with disfavor because of the limited importance on pleading in federal practice, and because they are often used as a delaying tactic." Somanetics Corp. v. CAS Med. Sys., Inc., No. 09-13110, 2010 WL 2178836, at *3 (E.D. Mich. May 26, 2010) (citation and internal quotation marks omitted). That said, they are "generally granted where the allegations are clearly immaterial to the controversy or would prejudice the movant." Aljalham v. American S.S. Co., No. 08-14043, 2010 WL 1754301, at *2 (E.D. Mich. Apr. 29, 2010) (citing Brown, 201 F.2d at 822). The decision to strike an allegation from a complaint lies in the discretion of the trial court. Id. (citation omitted).

"Immaterial" for purposes of the Rule "means that the matter has no bearing on the

controversy before the court." In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citation omitted).  The term "scandalous" "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." Pigford v. Veneman, 215 F.R.D. 2, 4 (D.D.C. 2003), *recons. denied*, 216 F.R.D. 1 (D.D.C. 2003) (citation omitted); *see also* In re 2TheMart.com, Inc. Sec. Litig., 114 F. Supp. 2d at 965 ("'Scandalous' includes allegations that cast a cruelly derogatory light on a party or other person.") (citation omitted).  Here, the Court finds that the allegation is immaterial and clearly "cast[s] a cruelly derogatory light" on some of the parties in this case, particularly Allen and DeJesus.  Accordingly, the motions are GRANTED and section II, paragraph 11 is stricken from the complaint.  *See* Crawford v. Miami County Comm'rs, No. 3:10cv00030, 2010 WL 1433456, at *4 (S.D. Ohio Mar. 15, 2010), *report & recommendation adopted by* 2010 WL 1433453 (S.D. Ohio Apr. 2, 2010) (plaintiff's allegation "accusing one officer of being sent to rehab from being addicted to marijuana" subject to motion to strike).

*CONCLUSION*

For the reasons set out above, the motions are GRANTED.  To summarize, (1) the Plaintiff's federal claims under § 1983 against Defendants Wyatt, Decatur County and DeJesus, as well as her state law claims against DeJesus, are DISMISSED as to acts occurring in 2007; (2) all claims against Defendant Scott are DISMISSED; (3) all state law claims against Wyatt and Decatur County are

DISMISSED; and (4) section II, paragraph 11 of the Plaintiff's complaint is STRICKEN.

IT IS SO ORDERED this 24th day of June 2010.

            s/ J. DANIEL BREEN
            UNITED STATES DISTRICT JUDGE